580

36831.  HARDY *v.* WAITS *et al:*

Decided April 10, 1958—Rehearing denied May 5, 1958.

*G. Seals Aiken, Randall Evans, Jr.,* for plaintiff in error.

*A. Paul Cadenhead, Nall, Sterne, Miller, Cadenhead & Dennis,* contra.

Felton, Chief Judge.  Luther C. Hardy sued Mrs. Henry Waits and Mrs. Barbara McLoud to recover damages for personal injuries alleged to have been sustained in an automobile collision.  The defendant Waits filed a counter-claim seeking to recover property damage growing out of the collision.  The jury returned a verdict in favor of the defendant's counter-claim. Hardy's motion for a new trial, as amended, was denied.  On the original appearance of this case here, this court reversed the judgment of the trial court for the reasons stated by this court in its opinion in *Hardy* v. *Waits,* 96 *Ga. App.* 511 (100 S. E. 2d 633).  The Supreme Court reversed the ruling of this court on certiorari.  *Waits* v. *Hardy,* 214 *Ga.* 41 (102 S. E. 2d 590).  So much of ground 4 as is necessary to fully understand the ruling of this court and that of the Supreme Court is as follows: "Movant contends that the trial judge committed reversible error of . a very prejudicial nature to him in allowing Mr. Paul Cadenhead, counsel for defendants, to argue and contend in his opening statement to the jury before the introduction of evidence, that movant did not even go to a doctor until he employed G. Seals Aiken as his attorney, that the said Mr. Aiken then sent movant to a doctor, and that this is a 'trumped-up' law suit, and in effect and in substance that Mr. Aiken and movant trumped-up said law suit; in failing and refusing, upon motion of counsel for movant, to state to Mr. Cadenhead in the presence and hearing of the jury that his said remarks, argument, and contentions were improper and reflected upon movant's counsel, and to instruct Mr. Cadenhead to desist from making any such remarks again in this court and in this case, and that the jury be in-

structed by said judge that the said remarks, contentions, and argument of Mr. Cadenhead in his opening statement to the jury, were improper and illegal and reflected upon counsel for movant and should be disregarded entirely by the jury.

"(a) Movant shows the official court reporter was not in the courtroom at the time said statements, contentions, and arguments of Mr. Cadenhead were made in his opening statement to the jury. However, immediately upon the making of said statements, contentions, and arguments by Mr. Cadenhead to the jury in his opening statement, movant's counsel objected thereto and made the motion set forth in this subparagraph. In order to make a record of said statements, contentions, and arguments by Mr. Cadenhead, the objections and motion of movant's counsel, and the comments and rulings of the court, movant's counsel secured the court reporter and had a hearing in the chambers of the Presiding Judge, outside the presence and hearing of the jury, and at that time the following transpired:

" 'The Court: Mr. Cadenhead, Mr. Aiken says he has something he wants to take up outside the presence of the jury.

" 'Mr. Cadenhead: All right, sir.

" 'Mr. Aiken: If your Honor pleases, with no reflection upon anyone but in the performance of my duty as counsel for the plaintiff in this case, I call your Honor's attention to the fact when the reporter was not here, when Mr. Cadenhead made his opening statement to the jury he stated in substance, I don't recall his exact words, but he stated in substance that Mr. Hardy didn't even go to a doctor and that I sent him to a doctor and that this is a trumped-up lawsuit, by sending Mr. Hardy to the doctor and that he wasn't hurt, and that I was the one that trumped the whole thing up. Now, at the time that I made the motion before your Honor—I don't know whether your Honor had heard the statement—

" 'The Court: I heard it. I don't think you repeated him accurately. He said that the evidence would show that he didn't get a doctor until after he had hired a lawyer, after he had hired a lawyer.

" 'Mr. Aiken: That's right; that I sent him to the doctor.

" 'The Court: He may have said in his opinion it was a trumped-up lawsuit.

" 'Mr. Aiken: That's right; that he didn't until he got a lawyer.

" 'The Court: He didn't say you. He just said after he got a lawyer and he then got a doctor, then in his opinion or his contention, it was a trumped-up lawsuit.

" 'Mr. Aiken: But he also stated, and I think Mr. Cadenhead will frankly admit it, that he stated that I sent him to the doctor. He stated that. And I state in my place that he stated that.

" 'The Court: He may have said that. I think he said he got the doctor after he got the lawyer.

" 'Mr. Cadenhead: I said that his counsel referred him to a doctor. That is the language of your own doctor in his deposition, Mr. Aiken.

" 'Mr. Aiken: That you brought out on cross-examination by hearsay after you had him call somebody else on the telephone. Pure hearsay.

" 'Mr. Cadenhead: My contention, as I stated in there, that Mr. Hardy made no claim for injury, did not go to a doctor until after he employed you as counsel, and that counsel referred him to an osteopath. That is practically a quote as near as I can make it. That is my contention.

" 'Mr. Aiken: Do you deny that you said that I sent him to a doctor?

" 'Mr. Cadenhead: I think I used the word "referred". I'll say this, in my mind it means the same thing.

" 'Mr. Aiken: And you did say that it was a trumped-up lawsuit, didn't you?

" 'Mr. Cadenhead: I said that was our contention based on those facts.''

The judgment of this court insofar as it was based on our original ruling has been vacated. In view of our ruling originally it was unnecessary for this court to consider special ground 5 of the amended motion for a new trial. It now becomes necessary to consider this ground.

1. Special ground 5 is very lengthy and we shall condense to show the kernel of the ground. The depositions of Dr. Frederick R. Lovell were introduced in evidence by the plaintiff. This ground contains an assignment of error on the admission of testimony of Dr. Lovell given on cross-examination. Dr. Lovell

was asked whether he knew who referred Mr. Hardy to him.. Dr. Lovell answered that he did not know and stated, "My girl secretary takes calls and makes appointments. I would have it on my card." The attorney for the defendant then asked Dr. Lovell if he would be willing to call his office at that moment and refresh his recollection and answer as to the two items, the date of the first treatment and who referred Mr. Hardy to him. Whereupon, Dr. Lovell telephoned his office and then answered that the date of the first treatment was December 4th and that Mr. Seals Aiken referred Mr. Hardy to him. The objection to this testimony was, "That is pure hearsay over the telephone as to what somebody else has got on a card. He said he didn't know just above there. And I say that his testimony to the effect that I referred or sent Mr. Hardy to him as there stated would be nothing in the world but hearsay. He said he didn't know."

The admission of this testimony was erroneous and under the facts of this case was harmful and prejudicial to the plaintiff at least in that it could have had the effect of impeaching the testimony of Mr. Hardy who testified that Mr. Aiken did not refer him to Dr. Lovell. The reasons why this testimony was inadmissible are many. The card was not produced in court or before the one taking the depositions. It was not shown that the witness made the entry or that it was made at his direction. It was not shown that the witness at one time had independent knowledge of the fact testified to. It was not shown whether the person speaking to the witness over the telephone made the entry on the card and whether if he or she made it, he or she knew the witness's signature. The person speaking to the witness over the telephone was not under oath. There was no testimony to the effect that the card or record was customarily made in the due course of business. The card or record was not introduced in evidence as a record made in the due course of business. Code § 38-1707; Code (Ann.) § 38-711 (Ga. L. 1952, p. 177); *Harris v. State,* 191 *Ga.* 243 (10) (12 S. E. 2d 164); *Lenney v. Finley,* 118 *Ga.* 427 (3) (45 S. E. 317); McCormick on Evidence, Sec. 9, p. 14, "Refreshing Recollection"; Sec. 289, "Business Records."

The admission of this testimony could have infected the entire

case because the jury could have found that if the plaintiff was deliberately lying as to who referred him to a doctor, if anyone did, he was lying as to the other phases of the case. The matters referred to in *Aiken* v. *Glass,* 95 *Ga. App.* 849 (2) (99 S. E. 2d 426) did not infect the whole case but referred solely to damages and the amount after a finding of liability.

The other matters complained of which have not already been ruled on will not likely recur on another trial in view of the rulings of this court and of the Supreme Court.

The court erred in denying the motion for new trial.

*Judgment reversed. Quillian and Nichols, JJ., concur.*